UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JORGE RIOS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Civil Action No. 14-40171-IT |
| | ) |
| UNITED STATES OF AMERICA, et al. | ) |
| Defendants. | ) |
| | ) |

**REPORT AND RECOMMENDATION ON DEFENDANTS' MOTIONS TO DISMISS**

[Dkt. Nos. 22, 28, 30, 31]

February 26, 2016

Boal, M.J.

Plaintiff Jorge Rios brought this action pro se against the United States of America, the Health Alliance Hospital in Leominster, Massachusetts, and Drs. Robert Leslie Shelton, Jr. and Joseph C. Palombra.[1] Rios, an inmate at the Federal Medical Center, Devens, alleges that he did not receive appropriate medical treatment in or around September 2014. As a result, Rios contends that the defendants violated his Eighth Amendment rights and/or committed negligent acts. The matter is presently before the court on the defendants' motions to dismiss.[2] Dkt. Nos. 22, 28, 30, 31. For the following reasons, this Court recommends that the District Judge assigned to this case grant the motions without prejudice.

---

[1] Rios spells this defendant's last name as "Palombra." Defendant's motion to dismiss spells the name as "Palomba." For the sake of consistency, and without taking a position as to the correct spelling, the Court will use "Palomba."

[2] On November 18, 2015, the District Judge assigned to this case referred the present motions to the undersigned United States Magistrate Judge. Dkt. No. 41.

1

I.  **BACKGROUND**

   A.  **The Complaint**[3]

On or about November 18, 2014, Rios filed a complaint alleging constitutional violations, pursuant to 42 U.S.C. § 1983 ("Section 1983") and the Eighth Amendment of the United States Constitution, as well as negligence claims. Dkt. No. 1 ("Complaint"). Rios alleges that he suffers from Fabry disease, which was not properly treated by the defendants. Rios further alleges that the defendants did not treat his other medical conditions, which include gallstones, nausea and vomiting, and chronic neuropathic pain syndrome. Complaint at 3.[4]

By way of background, Rios states that in 2006, even though he underwent a surgical procedure to remove his gallbladder, it was not removed. Id. He also states that he has been placed on several different types of medications, including Fabrazyme, which is used to treat Fabry disease. Id.

Rios' claims derive from allegedly inadequate medical care that he received at Health Alliance Hospital in and around September 2014. Specifically, he alleges that on September 2, 2014, he began vomiting incessantly. Id. He was provided with nausea medication, and the next day, he was taken by ambulance to the Health Alliance Hospital in Leominster, Massachusetts. Id. Rios contends that he was initially seen by, inter alia, Dr. Shelton, who provided him with pain medication four times a day for a period of one week. Id. Rios also contends that a report written by Dr. Palomba regarding the results of Rios' CT scan led to questions about whether his

---

[3] Because this case is presently before the Court on a motion to dismiss, the Court sets forth the facts taking as true all well-pleaded allegations in the complaint and drawing all reasonable inferences in Rios' favor. See Morales-Tañon v. Puerto Rico Electric Power Authority, 524 F.3d 15, 17 (1st Cir. 2008).

[4] When referring to the parties' pleadings and exhibits, the Court cites to the docket (ECF) page numbers rather than the page numbers in the original documents.

gallbladder had previously been removed. Id. at 3-4. According to Rios, on September 5, 2014 and September 8, 2014, Dr. Shelton determined that a cholecystectomy—removal of the gallbladder—would be likely. Id.

On September 10, 2014, Rios allegedly underwent a laparoscopic cholecystectomy, and there was an "absence of gallbladder." Id. at 4. On September 12, 2014, Rios' providers still could not explain the source of Rios' pain. Id. Rios was discharged on September 15, 2014, although he continued to have abdominal pain. Id. According to Rios, his pain medication was increased and although doctors discussed finding a Fabry disease specialist, none was called. Id.

Rios alleges that as a result of the treatment he received at the hospital, he is left with several scars and a gallbladder that is still intact. Id. at 5. Rios also contends that he remains in constant "level 10" pain, suffers from emotional distress, is on medication overload, has an infection around his navel, and that no one has attempted to ameliorate his grievances. Id.

  **B. Defendants' Motions To Dismiss**

Between June 8 and June 18, 2015, each of the defendants filed a motion to dismiss Rios' complaint. Dkt. Nos. 22, 28, 30, 31. With respect to the tort claims, the United States moves, pursuant to Federal Rule of Civil Procedure 12(b)(1), for dismissal on the basis that Rios has failed to exhaust his remedies as required by the FTCA. Dkt. No. 23 at 2-4. The United States, with respect to the constitutional claims, and Drs. Shelton and Palomba, with respect to all claims, move for dismissal on the grounds that Rios has not exhausted his administrative remedies as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997a(e). See Dkt. No. 23 at 4-6; Dkt. No. 29 at 11-12; Dkt. No. 32 at 5-6.

In addition, pursuant to Rule 12(b)(6), Health Alliance Hospital and Drs. Shelton and Palomba argue that Rios fails to state a plausible claim for relief and that Rios' claims of

constitutional violations cannot survive because he has not alleged that Health Alliance Hospital or Drs. Shelton and Palomba were acting under color of state or federal law. Dkt. No. 29 at 4-11; Dkt. No. 30; Dkt. No. 32 at 6-9. Finally, Drs. Shelton and Palomba contend that the Court should decline to exercise supplemental jurisdiction over any purported state law claims asserted by Rios. Dkt. No. 29 at 12-13; Dkt. No. 32 at 12-13. Rios only opposed Defendant Shelton's motion to dismiss on July 6, 2015. Dkt. No. 34. However, many of his arguments apply to the other motions to dismiss.

## II.     STANDARD OF REVIEW

Defendants seeks dismissal of the instant action on two primary grounds: (1) lack of subject matter jurisdiction pursuant to Rule 12(b)(1); and (2) failure to state a claim pursuant to Rule 12(b)(6).

### A.     Rule 12(b)(1)

Federal courts are courts of limited jurisdiction. Destek Group, Inc. v. State of New Hampshire Pub. Util. Comm'n, 318 F.3d 32, 38 (1st Cir. 2003). The party claiming that there is jurisdiction carries the burden of showing that the court has jurisdiction. Murphy v. United States, 45 F.3d 520, 522 (1st Cir. 1995).

When considering a motion to dismiss under Rule 12(b)(1), "the district court must construe the complaint liberally, treating all well-pleaded facts as true and indulging all reasonable inferences in favor of the plaintiff." Aversa v. United States, 99 F.3d 1200, 1210 (1st Cir. 1996). Under Rule 12(b)(1), the Court is not restricted to the pleadings but may consider extra-pleading materials such as affidavits and testimony to resolve factual disputes concerning the existence of jurisdiction. Id.

**B.     Rule 12(b)(6)**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id.

The Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. Decotiis v. Whittemore, 635 F.3d 22, 28–29 (1st Cir. 2011) (citation omitted). Furthermore, pro se pleadings are to be liberally construed. Ayala Serrano v. Gonzalez, 909 F.2d 8, 15 (1st Cir. 1991). However, while the court must accept as true all of the factual allegations contained in the complaint, that doctrine is not applicable to legal conclusions. Iqbal, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. See also Sanchez v. Pereira-Castillo, 590 F.3d 31, 48 (1st Cir. 2009) ("In other words, a plaintiff must offer 'more than an unadorned, the-defendant-unlawfully-harmed-me accusation,' in order to claim a 'plausible entitlement to relief.'") (citations omitted). Accordingly, a complaint does not state a claim for relief where the well-pleaded facts fail to warrant an inference of any more than the mere possibility of liability. Iqbal, 556 U.S. at 679.

An affirmative defense may be adjudicated on a motion to dismiss for failure to state a claim. See In re Colonial Mortgage Bankers Corp., 324 F.3d 12, 16 (1st Cir. 2003). However, such a dismissal may only occur when (1) the facts that establish the defense are definitively

5

ascertainable from the allegations of the complaint, the documents incorporated therein, matters of public record, and other matters of which the court may take judicial notice; and (2) the facts so gleaned conclusively establish the affirmative defense.  See id.

### C. Materials Extrinsic To The Pleadings

#### 1. Standard Of Law

A court may consider extra-pleading materials when evaluating subject matter jurisdiction pursuant to Rule 12(b)(1).  Aversa, 99 F.3d at 1210.  Specifically, in deciding such motions, the First Circuit has held that a district court "without conversion, may consider extrinsic materials and, to the extent it engages in jurisdictional factfinding, is free to test the truthfulness of the plaintiff's allegations."  Dynamic Image Techs., Inc. v. United States, 221 F.3d 34, 37 (1st Cir. 2000).

However, if on a motion under Rule 12(b)(6), matters outside the pleadings are presented and not excluded by the court, the motion must be treated as one for summary judgment.  Fed. R. Civ. P. 12(d).  "[U]nder certain 'narrow exceptions,' some extrinsic documents may be considered without converting a motion to dismiss into a motion for summary judgment." Freeman v. Town of Hudson, 714 F.3d 29, 36 (1st Cir. 2013) (citing Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993)).  "These exceptions include documents the authenticity of which are not disputed by the parties; official public records; documents central to plaintiffs' claim; and documents sufficiently referred to in the complaint."  Id. (internal quotations, modifications, and citations omitted).

#### 2. Analysis

The United States attaches an affidavit and accompanying documents to its motion to dismiss.  Dkt. Nos. 23-1, 23-2.  Specifically, in support of its claim that Rios has failed to

exhaust his administrative remedies, the United States submits the June 5, 2015 affidavit of Ondréya Barksdale, paralegal specialist for the Northeast Regional Office of the Federal Bureau of Prisons. Dkt. No. 23-1 ("Barksdale Aff."). The United States has attached to this affidavit a January 6, 2015 letter acknowledging receipt of Rios' administrative claim and a copy of the official grievance and accompanying medical records which Rios submitted to the Director of the Torts Branch of the Civil Division of the United States Department of Justice. Dkt. No. 23-2.

The administrative grievance records submitted by the United States are relevant to whether Rios properly exhausted his claims. Rios' tort claims against the United States must comply with the FTCA and his federal law claims, generally, are subject to the exhaustion requirements of the PLRA. The FTCA and PLRA exhaustion requirements, however, are different in nature. The FTCA's requirement is jurisdictional, while the PLRA's requirement is not. See Acosta v. U.S. Marshals Serv., 445 F.3d 509, 514 (1st Cir. 2006); Cf. Casanova v. Dubois, 289 F.3d 142, 147 (1st Cir. 2002) (concluding that exhaustion under the PLRA is not a prerequisite to federal jurisdiction).

Accordingly, the Court will consider the administrative grievance records submitted by the United States for the limited purpose of determining subject matter jurisdiction over Rios' FTCA claims. Because Rios' grievance forms and medical records do not fall within the narrow exceptions of documents a court may consider when evaluating a motion to dismiss pursuant to Rule 12(b)(6), the Court declines to consider these materials for the purpose of assessing whether Rios complied with the PLRA or otherwise fails to state a claim.

## III.   DISCUSSION

### A.   Exhaustion

#### 1.   The FTCA

The United States has moved for dismissal of Rios' negligence claims on the basis that he has not satisfied the FTCA's exhaustion requirements.

##### i.   Standard Of Law

Under the doctrine of sovereign immunity, the United States is immune from suit unless it has consented to be sued.  Skwira v. United States, 344 F.3d 64, 72 (1st Cir.2003) (citing United States v. Mitchell, 445 U.S. 535, 538 (1980)).  However, the FTCA, 28 U.S.C. §§ 1346(b), 2671-80, provides a limited waiver of sovereign immunity for tort actions against the United States.  Sosa v. Alvarez-Machain, 542 U.S. 692, 700 (2004).  Specifically, the FTCA permits individuals to sue the government "for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment."  28 U.S.C. § 1346(b)(1); see also 28 U.S.C. § 2674 ("The United States shall be liable [with respect] . . . to tort claims, in the same manner and to the same extent as a private individual under like circumstances. . . .").

The FTCA also contains an exhaustion requirement, which provides, in pertinent part:

> An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail. The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section.

28 U.S.C. § 2675(a). Accordingly, claimants must follow this administrative framework before instituting suit. Dynamic Image Techs., Inc., 221 F.3d at 39.

Filing a lawsuit before exhaustion bars the claim for jurisdictional purposes. McNeil v. United States, 508 U.S. 106, 112 (1993). Specifically, to satisfy the exhaustion requirement, a plaintiff's claim must have been finally denied by the appropriate federal agency prior to filing suit. 28 U.S.C. § 2675(a). A federal agency must render a final decision within six months after the filing of a grievance; after six months, the failure to issue a decision is deemed a final denial of the claim. Id. Pro se plaintiffs are not immune from the FTCA's exhaustion requirements. McNeil, 508 U.S. at 113.

ii.     Analysis

The United States argues that Rios' FTCA claim must be dismissed because he filed the instant action before the Bureau of Prisons adjudicated his administrative tort claim. Dkt. No. 23 at 4. This Court agrees.

On November 18, 2014, the United States Department of Justice, Torts Branch received an administrative tort claim from Rios dated November 7, 2014. Dkt. No. 23-2 at 35. On November 18, 2014, Rios filed the instant Complaint. Dkt. No. 1. The Bureau of Prisons received Rios' claim form on December 10, 2014, and a response deadline was set for June 9, 2015. Dkt. No. 23-2 at 6-7.

Rios has not met his burden of establishing that, prior to filing the instant action, he presented his claim to the appropriate federal agency and the agency finally denied the claim. At the time Rios filed suit, he had not exhausted his administrative remedies. That is, Rios simply did not wait for the agency's final denial of his claim or for the six months necessary for exhaustion to occur. Indeed, Rios appears to admit as much, stating that he "reserved his

requirements to fulfill grievance procedures because his life is in imminent danger." Complaint at 2. Because Rios did not exhaust his administrative remedies as required under 28 U.S.C. § 2675(a), this Court lacks subject matter jurisdiction over Rios' FTCA claims.

Accordingly, this Court recommends that the District Judge assigned to this case grant the United States' motion with respect to Rios' FTCA claims.

### 2. The PLRA

Drs. Shelton and Palomba seek dismissal of Rios' claims on the basis that Rios failed to exhaust his administrative remedies under the PLRA. With respect to the constitutional claims alleged by Rios, the United States similarly moves under the PLRA.

#### i. Standard Of Law

To the extent that Rios brings federal law claims against any of the defendants, then the PLRA applies.[5] Section 1997e(a) of the PLRA states that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The PLRA attempts to eliminate unwarranted interference by federal courts with the administration of prisons and affords corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case. Woodford v. Ngo, 548 U.S. 81, 93-4 (2006); Porter v. Nussle, 534 U.S. 516, 524-5 (2002). The PLRA was intended to also reduce the quantity and improve the quality of prisoner suits. Id.

The PLRA applies to any action based on Section 1983 or "any other federal law," including Bivens actions. See 42 U.S.C. § 1997(e). It also applies to all actions challenging

---

[5] Negligence claims under state law may be asserted directly against private actors and are not subject to the PLRA. See Acosta, 445 F.3d at 514.

prison conditions and "individual instances of an inmate's medical mis- or non-treatment." See Hoffenberg, 2004 WL 2203479, at *10; see also Acosta, 445 F.3d at 512.

A court cannot consider a federal claim that was not properly exhausted prior to filing suit. 42 U.S.C. § 1997(e); Jones v. Bock, 549 U.S. 199, 219-20 (2007). It is not enough that a prisoner has commenced the administrative process or commences the administrative process after a suit is filed; exhaustion subsequent to the filing of suit will not suffice. Medina-Claudio v. Rodriguez-Mateo, 292 F.3d 31, 36 (1st Cir. 2002). Furthermore, a serious medical condition does not relieve a prisoner of the obligation to exhaust. Leja v. Sabol, 487 F. Supp. 2d 1, 2 (D. Mass. 2007).

To properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the rules that are defined not by the PLRA, but by the prison grievance process itself. Jones, 549 U.S. at 218. "The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." Id.

The Federal Bureau of Prisons has a grievance system for prisoners who seek formal review of complaints regarding any aspect of their imprisonment. Leja, 487 F. Supp. 2d at 2. The prisoner may submit a formal written Administrative Remedy Request to the Warden, and if the inmate's formal request is denied, he may submit an appeal to the Regional Director of the BOP. 28 C.F.R. §§ 542.10-.19 (regulations governing the Administrative Remedy Program for inmates in facilities operated by the Bureau of Prisons). The inmate may appeal a negative decision of the Regional Director to the General Counsel's office. 28 C.F.R. § 542.15.

Inmates are not required to specifically plead or demonstrate exhaustion in their complaints. Jones, 549 U.S. at 216. Exhaustion is an affirmative defense and, accordingly, a defendant bears the burden of establishing that the plaintiff did not exhaust his administrative remedies. Id. Dismissal, rather than a stay of proceedings, is appropriate where a defendant demonstrates that an inmate failed to exhaust his administrative remedies prior to filing suit. Medina-Claudio, 292 F.3d at 36.

ii.   Analysis

To the extent Rios alleges federal (non-FTCA) claims against the United States and Drs. Shelton and Palomba, they are subject to the PLRA.[6] With respect to the PLRA's exhaustion requirement, the United States and Drs. Shelton and Palomba bear the burden of proof. However, Rios' Complaint states that he has not exhausted his claims.

In at least two places in the Complaint, Rios states that he has not complied with the applicable exhaustion requirements. First, Rios indicates that he did not satisfy the exhaustion requirement because, under the "Exceptions Clause," he "reserved his requirements to fulfill grievance procedures because his life is in imminent danger."[7] Complaint at 2. Second, he asks

---

[6] The Court notes that Rios has failed to plead any cognizable non-FTCA claims against the United States. Generally, a Bivens claim may not lie against the United States because it has sovereign immunity against such claims. F.D.I.C. v. Meyer, 510 U.S. 471, 484-86 (1994); Aldrich v. United States, C.A. No. 13-12085-NMG, 2013 WL 6196002 at *6-7 (D. Mass. Nov. 22, 2013).

[7] Rios misstates the law as neither case on which he relies stands for the proposition that a prisoner in "imminent danger" is absolved from the duty to exhaust. While Rios attempts to apply a PLRA "exception" to his case, the exception he appears to reference only applies to the PLRA's three strikes provision. The PLRA's three strikes provision bars a prisoner who has filed three or more complaints that have been dismissed as frivolous, malicious, or for failure to state a claim, from proceeding in forma pauperis. 28 U.S.C. § 1915(g). After three meritless suits, a prisoner must pay the full filing fee unless the prisoner is under imminent danger of serious physical injury. See Schmidt v. Rodrigues, C.A. No. 15-10771, 2016 WL 360748, at *1

12

the Court to grant him a stay of pleadings to "allow him to proceed with administrative remedies." Id. at 6. Finally, in his opposition to Dr. Shelton's motion, Rios offers no proof that he has exhausted his administrative remedies, and instead, disputes that he must do so. Dkt. No. 34 at 2.

Rios is not relieved of his obligation to exhaust under the PLRA either by exhausting after filing suit or because he allegedly suffers from a serious medical condition. Accordingly, for the reasons stated herein, the Court recommends that the District Judge assigned to this case grant Drs. Palomba and Shelton's motions to dismiss any federal claims against them on the basis that Rios has not exhausted his administrative remedies as required by the PLRA. Additionally, to the extent there are any claims alleged against the United States that are not subject to the FTCA, the Court recommends that they be dismissed for failure to exhaust the PLRA as well.

### B. Acts Committed Under Color Of Authority

The Health Alliance Hospital and Drs. Palomba and Shelton have also moved to dismiss on the basis that Rios has not alleged that these defendants are government actors—an essential element to any Section 1983 and/or Bivens claim.

#### 1. Standard Of Law

##### i. Section 1983 Claims

Section 1983 is a vehicle through which individuals may sue certain persons acting under the color of state law for deprivation of federally assured rights. Gagliardi v. Sullivan, 513 F.3d 301, 306 (1st Cir. 2008). Section 1983 is "not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." Graham v. Connor, 490

---

(11th Cir. Jan. 29, 2016). This exception to the PLRA's three strikes provision is inapposite to the present action.

U.S. 386, 393-4 (1989).  A claim under Section 1983 requires three elements for liability, one of which is state action.  <u>Senna v. Ciccone</u>, C.A. No. 14-12849-DJC, 2015 WL 751166, at *2 (D. Mass. Feb. 23, 2015).

Private parties are construed to be state actors under Section 1983 only in rare circumstances.  <u>Estades-Negroni v. CPC Hosp. San Juan Capestrano</u>, 412 F.3d 1, 4 (1st Cir. 2005).  The First Circuit has endorsed the following three tests to determine whether a private party may fairly be characterized as a state actor: the state compulsion test, the nexus/joint action test, and the public function test.  <u>Id.</u> at 5.  Under the state compulsion test, a private party may be a state actor when the state has exercised coercive power or has provided such significant encouragement, either overt or covert, that the challenged conduct must in law be deemed to be that of the state.  <u>Id.</u>  The nexus/joint action test examines the totality of the circumstances and determines whether the state has so far insinuated itself into a position of interdependence with the private party that it was a joint participant in activity.  <u>Id.</u>  Finally, under the public function test, a private party is viewed as a state actor if the plaintiff establishes that, in engaging in the challenged conduct, the private party performed a public function that has been traditionally the exclusive prerogative of the state.  <u>Id.</u>

To establish his constitutional claims under Section 1983, Rios must allege that Health Alliance Hospital and Drs. Shelton and Palomba acted under color of state law when they allegedly deprived Rios of his rights under the Eighth Amendment.  <u>See</u> <u>Omran v. U.S.</u>, C.A. No. 14-13881-LTS, 2015 WL 1523587 at *7 (D. Mass. March 31, 2015).  Where a plaintiff fails to allege facts sufficient to establish that a defendant acted under color of law, the claim is subject to dismissal.  <u>Estades-Negroni</u>, 412 F.3d at 4; <u>Hickey v. MetroWest Medical Center</u>, 193 Fed. Appx. 4, 6 (1st Cir. 2006).

        ii.     Bivens Claims

The Bivens doctrine allows a plaintiff to vindicate certain constitutionally protected rights through a private cause of action for damages against federal officials in their individual capacities. DeMayo v. Nugent, 517 F.3d 11, 14 (1st Cir. 2008). An action under Bivens serves as the federal analog to Section 1983 suits against state officials. Soto–Torres v. Fraticelli, 654 F.3d 153, 158 (1st Cir. 2011). A claimant who seeks relief under Bivens must prove a violation of a constitutional right by a federal agent acting under color of federal law. DeMayo, 517 F.3d at 14. When determining whether a party is a "federal actor" under Bivens, courts rely on tests analogous to those employed in Section 1983 actions. See Upshaw v. Andrade, C.A. 10-11517, 2012 WL 996783 at *3 (D. Mass. 2012) (citing Brown v. Philip Morris, Inc., 250 F.3d 789, 801 (3rd Cir. 2001) (analyzing whether private party was federal actor within meaning of Bivens by applying three part test: (1) public function test; (2) close nexus test; and (3) symbiotic relationship test)).

Bivens does not confer a right of action for damages against private entities acting under color of federal law. Corr. Servs. Corp. v. Malesko, 534 U.S. 61, 63 (2001). Furthermore, under Bivens, a plaintiff must plead that each defendant, through his own individual actions, violated the Constitution—there is no vicarious liability. Soto–Torres, 654 F.3d at 158.

    2.     Analysis

Here, Rios asserts no allegations as to whether Health Alliance Hospital and Drs. Shelton and Palomba are state or federal actors. Although Rios appears to bring suit under Section 1983, he also requests an order allowing him to amend his complaint "in the light or form of a Bivens action. . . ." Complaint at 2, 6. However, the Complaint fails to reference the involvement of

any state actors. Indeed, the only government entity that is mentioned is the Federal Bureau of Prisons. Accordingly, there appears to be no basis for a Section 1983 action.

In any case, Rios fails to state plausible claims under both Section 1983 and <u>Bivens</u>. First, because <u>Bivens</u> does not allow for vicarious liability or suit against private entities, any alleged <u>Bivens</u> claim against Health Alliance Hospital must fail. Second, Rios has alleged no facts on which the Court can find that any of the defendants acted as government agents.

Accordingly, this Court finds that Rios has failed to plead any facts that raise a plausible claim that the Health Alliance Hospital or Drs. Shelton and Palomba are government actors or agents. On this basis, this Court recommends that the District Judge assigned to this case grant the motions of defendants Health Alliance Hospital and Drs. Palomba and Shelton with respect to the constitutional claims alleged against them.

### C. Deliberate Indifference

Deliberate indifference to a prisoner's serious illness or injury states a cause of action for a violation of the Eighth Amendment under Section 1983. <u>Estelle v. Gamble</u>, 429 U.S. 97, 105 (1976). To establish an Eighth Amendment violation, Rios must show that: (1) objectively, the deprivation alleged is sufficiently serious; and (2) subjectively, that the defendants were deliberately indifferent to his health or safety. <u>Farmer v. Brennan</u>, 511 U.S. 825, 834 (1994).

A medical need is "serious" if "it is one that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." <u>Gaudreault v. Municipality of Salem</u>, 923 F.2d 203, 208 (1st Cir. 1990). The seriousness of an inmate's needs may also be determined by reference to the effect of a delay in treatment. <u>Id.</u>

An Eighth Amendment claim based on medical mistreatment requires more than "an inadvertent failure to provide adequate medical care" and must involve "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Feeney v. Corr. Med. Servs., 464 F.3d 158, 161 (1st Cir. 2006) (quoting Estelle, 429 U.S. at 105-106). Rios can demonstrate deliberate indifference only if the medical attention he received is "so clearly inadequate as to amount to a refusal to provide essential care" and must be "so inadequate as to shock the conscience." Torraco v. Maloney, 923 F.2d 231, 234 (1st Cir. 1991) (citations omitted). Mere negligence or medical malpractice does not establish deliberate indifference. See Farmer, 511 U.S. at 835; Estelle, 429 U.S. at 104.

Rios has not alleged sufficient facts to state an Eighth Amendment claim against Dr. Palomba. In fact, Rios' complaint alleges that he interacted with Dr. Palomba only once. Specifically, Rios alleges that:

> The Emergency Care Report conducted by Defendant Palombra indicates that a "CT scan of the abdomen and pelvis was performed . . . and did not visualize the gallbladder . . . An ultrasound of the abdomen . . . two days ago . . . appeared to show a gallbladder (albeit) difficult to delineate and appeared to be filled with gallstones . . . I will try to obtain his medical records from California to ascertain whether his gallbladder was removed, and if [it] was not, why it [was] not removed . . . ischemia could be responsible for ongoing symptoms."

Complaint at 3-4. There are no other allegations in Rios' complaint regarding Dr. Palomba.

Even construing Rios' allegations liberally, the Court concludes that Rios fails to allege sufficient facts to support a claim of deliberate indifference on the part of Dr. Palomba. Dr. Palomba appears to have conducted an emergency care report, read Rios' medical scans, and made a plan for obtaining Rios' medical records. These claims are insufficient to allege plausibly any claim for deliberate indifference as to Dr. Palomba.

Accordingly, the Court recommends that the District Judge assigned to this case grant Dr. Palomba's motion to dismiss on this additional basis.

### D. State Law Claims

Rios "seeks redress for violations of his state law rights via supplemental jurisdiction." Complaint at 2. Specifically, it appears that Rios is attempting to assert negligence and/or medical malpractice claims against Health Alliance Hospital and Drs. Palomba and Shelton. In light of this Court's recommendation that all federal claims be dismissed, this Court also recommends that the district court decline to exercise its supplemental jurisdiction over any state law claims alleged by Rios. See Camelio v. American Fed'n, 137 F.3d 666, 672 (1st Cir.1998) ("Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law."). Where, as here, the federal claims are being dismissed at an early stage of the litigation, "the balance of competing factors ordinarily weigh strongly in favor of declining jurisdiction over state law claims[.]" Id. In the instant case, no party has put forth any reason why this Court should not follow the ordinary rule and decline to exercise jurisdiction over the state law claims.

Accordingly, this Court recommends that the entire complaint be dismissed without prejudice.

### IV. RECOMENDATION

For the foregoing reasons, this Court recommends that the District Judge assigned to this case grant the defendants United States, Health Alliance Hospital, and Drs. Palomba and Shelton's motions to dismiss.

## V.    REVIEW BY DISTRICT JUDGE

The parties are hereby advised that under the provisions of Fed. R. Civ. P. 72 any party who objects to these proposed findings and recommendations must file a written objection thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The parties are further advised that the Unites States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with this Rule shall preclude further appellate review. See Keating v. Sec'y of Health & Human Servs., 848 F.2d 271, 275 (1st Cir. 1988); United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 604-05 (1st Cir. 1980); United States v. Vega, 678 F.2d 376, 378-79 (1st Cir. 1982); Scott v. Schweiker, 702 F.2d 13, 14 (1st Cir. 1983); see also Thomas v. Arn, 474 U.S. 140, 153-4, 106 S. Ct. 466, 474, 88 L. Ed. 2d 435 (1985). Accord Phinney v. Wentworth Douglas Hosp., 199 F.3d 1, 3-4 (1st Cir. 1999); Henley Drilling Co. v. McGee, 36 F.3d 143, 150-1 (1st Cir. 1994); Santiago v. Canon U.S.A., Inc., 138 F.3d 1, 4 (1st Cir. 1998).

                                              /s/ Jennifer C. Boal
                                              JENNIFER C. BOAL
                                              United States Magistrate Judge